UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
-----------------------------------------------------------------x

ANTHONY THOMPSON and Case No.: 2:16-cv-00074-DAK
OTC SOLUTIONS, LLC,

 Plaintiffs, **COMPLAINT**

 vs.

DAVID REES, CHASE CHANDLER, and
VINCENT & REES,

 Defendants.

-----------------------------------------------------------------x

 Plaintiffs Anthony Thompson and OTC Solutions LLC ("OTC") (collectively referred to as "Plaintiffs"), by their attorneys, for their complaint against Defendants David Rees, Chase Chandler, and Vincent & Rees (collectively referred to as "Defendants"), allege as follows:

## Nature of the Action

 1. This action is based on the substantial damage done to Plaintiff Anthony Thompson and his company, OTC, by virtue of a defective legal opinion issued by the firm of Vincent & Rees, prepared by attorneys David Rees and Chase Chandler of Vincent & Rees and dated January 29, 2010 ("Rees Opinion Letter") (Exhibit 1). These attorneys issued an opinion that OTC could receive and freely sell certain securities. The Rees Opinion Letter expressly provided that it could be relied upon by Mr. Thompson's company, OTC. Accordingly, Mr. Thompson and OTC did rely on that opinion letter in 2010 in agreeing to accept and then sell certain securities that had been offered as compensation for services performed by Mr. Thompson and OTC.

 2. Two years later, in 2012, the Securities and Exchange Commission ("SEC") filed

a complaint alleging that the Rees Opinion Letter was false and inaccurate, and naming attorney David Rees as a defendant. In response to that action, Mr. Rees declined and failed to demonstrate that the Rees Attorney Letter was correct, and instead entered into a settlement agreement with the SEC pursuant to which he is permanently barred from practicing law before the SEC.

3. As a direct consequence of the Defendants' issuance of that Rees Opinion Letter, and Plaintiffs' reliance on that Rees Opinion Letter, Mr. Thompson and OTC were accused by the SEC of the purchase and sale of unregistered securities. Because Defendant David Rees was unable to defend or support the Rees Opinion Letter on which Plaintiffs had relied, Mr. Thompson and OTC had no ability to defend against the SEC's claim that the opinion letter was false and inaccurate, and had to enter into a settlement of that claim.

4. The Defendants' issuance of the incorrect Rees Opinion Letter was the direct cause of the extensive damages suffered by Mr. Thompson and OTC. Defendants represented that they possessed the requisite skill and expertise to provide the opinion letter, concluded in that letter that the stock was saleable, and invited OTC to rely on the opinions expressed in that letter. Had the Defendants advised Mr. Thompson and OTC that the stock was actually restricted, and not saleable, Mr. Thompson and OTC would have obtained other payment – not stock – as compensation, or would have caused the issuer properly to register the securities. Because the Defendants issued a false and defective opinion that invited reliance, Mr. Thompson and OTC accepted and sold that stock.

5. The securities laws impose strict liability for the sale of unregistered securities, and so the Defendants' issuance of the defective opinion rendered Mr. Thompson and OTC automatically liable for disgorgement and penalties notwithstanding their reliance on these

attorneys.  Further, had the Defendants demonstrated the accuracy of that Rees Opinion Letter, Mr. Thompson and OTC would not have been liable for sale of unregistered securities.  Because of that Rees Opinion Letter, therefore, Plaintiffs have suffered substantial monetary and reputational damages in an amount in excess of $1,500,000.00.

### The Parties

6.Plaintiff Anthony Thompson is a resident of the State of Maryland.  During the period at issue in this Complaint, 2009 through 2012, he conducted business through OTC Solutions.

7.Defendant Vincent & Rees was a law firm operating in the State of Utah which, *inter alia*, provided legal services relating to the securities industry.

8.Defendant David Rees is a resident of Salt Lake City, Utah.  He purports to be a corporate, business and securities attorney.  He is licensed to practice law in Utah, and was a partner at the firm of Vincent & Rees.

9.Defendant Chase Chandler is a resident of Salt Lake City, Utah.  At the time of these events in 2010, he was an attorney with the firm of Vincent & Rees, having been admitted to the bar on 2007.  He was responsible for the preparation of the Rees Opinion Letter.

### Jurisdiction and Venue

10.Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the of $75,000.00, exclusive of interest and costs.

11.Venue is proper in this District as Defendants reside in this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

### Background

12. During the period 2008 through 2010, Anthony Thompson, through his company OTC Solutions, performed services relating to publicly traded companies including conducting email marketing campaigns to bring greater visibility to companies and their stock. For those services, which included research, preparation of promotional materials, and distribution of those materials to his sizable base of on-line subscribers, Mr. Thompson received fees.

13. In accordance with applicable regulations and authority governing the issuance of promotional materials in the securities industry, Mr. Thompson would disclose in his newsletters that he was being compensated for his preparation and dissemination of the material, and the amount of that compensation.

14. At times, Mr. Thompson's clients would seek to pay his fees in stock rather than cash. Because his work in relation to the publicly traded companies was the means by which Mr. Thompson earned his living, he generally had no interest in holding large quantities of stock and would accept stock as compensation only if that stock was readily saleable.

15. Generally, stock issued in a public offering registered under the federal securities laws is "unrestricted" and therefore saleable. On the other hand, stock that is issued not as part of a public offering is generally "restricted" and may be sold only if certain exemptions apply.

16. Determination of whether particular securities are "unrestricted" and may be traded freely generally requires analysis by an attorney, who gathers the relevant factual information and documentation and then issues an opinion letter advising the purchaser whether the shares may be freely transferred and sold. If the opinion letter concludes that the stock may be sold, the letter is also provided to a transfer agent in order to cause the removal of a "restricted" legend on the stock certificate.

17. In order to conduct an analysis regarding the status of the stock, the attorney must

obtain and review various documents, and consider and apply relevant securities laws. Through that process, the attorney evaluates the various factual and legal issues that govern whether a stock is restricted, and then conveys his or her conclusion in the opinion letter.

### The Rees Opinion Letter Regarding Stock of Recycle Tech

18. In or about 2010, Mr. Thompson was contacted to conduct a promotional internet campaign relating to a company called Recycle Tech. Mr. Thompson was offered shares of stock as compensation for the provision of those services, and was assured by the client that the stock was unrestricted and could be sold.

19. To verify that the stock could be sold, Mr. Thompson was also provided by the client with the opinion letter from the law firm of Vincent & Rees, dated January 29, 2010. That Rees Opinion Letter, which was prepared by Chase Chandler and David Rees, stated that the Letter was "***intended to be relied on*** by the Company, its registrar and transfer agent, ***the Shareholders***, and the Shareholders' Broker-Dealer." Anthony Thompson's company, OTC, was one of the "Shareholders" listed in the opinion letter.

20. The Rees Opinion Letter stated that Vincent & Rees had investigated and examined the documents that were necessary to the determination of the status of the stock, including the documents relating to a conversion of Promissory Notes into common stock. Based on its examination, Vincent & Rees concluded that there were Promissory Notes dated in February 2008, August 2008, and June 2009, that the Shareholders were acquiring the rights and interests to those Promissory Notes, that the Shareholders were then exercising their rights to convert the indebtedness to stock, that a Board Resolution authorized the issuance of those shares to the Shareholders, and that the Shareholders then received those shares in exchange for that earlier indebtedness.

21.     According to the Rees Opinion Letter, because "the Promissory Notes were issued on February 26, 2008, August 1, 2008 and June 15, 2009, the Shareholders were deemed to have acquired the Shares on or before those dates."  The Rees Opinion Letter concluded that, for purposes of the exemption from registration contained in Rule 144(d), "more than six months have elapsed since the date the Shares were deemed acquired by the Shareholders."  According to the Rees Opinion Letter, the stock was therefore immediately saleable by the Shareholders.

22.     The Rees Opinion Letter concluded that the shares of Recycle Tech Inc. ("Recycle Tech") may be issued to "Shareholders" without a restrictive legend, and that "the Shareholders may sell the shares free of any restrictions on transfer without registration under the Securities Act pursuant to an exemption from registration requirements as set forth in Rule 144 promulgated under Section 4(1) of the Securities Act."

23.     Mr. Thompson and OTC did rely on the Rees Opinion Letter.  Based on the conclusions of Defendants contained in that Rees Opinion Letter, Mr. Thompson agreed that OTC would accept stock as compensation for the services that were provided, and received and sold a total of 2,325,000 shares.

### The Securities and Exchange Commission Proceeding and Rees' Entry Into a Consent Judgment

24.     The Securities and Exchange Commission ("SEC") thereafter commenced an enforcement action against Mr. Thompson and OTC, among others, in the United States District Court for the Southern District of Florida, <u>SEC v. Recycle Tech, Inc., et al.</u>, Case No. 1:12-cv-21656-JAL (S.D. Fla.) (the "<u>Recycle Tech</u> action"), alleging that the Recycle Tech securities were actually restricted, and that Mr. Thompson's sale of those securities violated Section 5 of the Securities Act.  The SEC also alleged that the Rees Opinion Letter was false and/or deficient because it contained "false representations" and "misapplied Rule 144."

25.     Further, the SEC alleged that Vincent & Rees was contacted by "the architects" of an allegedly unlawful distribution of securities even prior to an acquisition and merger of the company to confirm that the firm would be prepared to issue an opinion letter confirming that the Recycle Tech stock was saleable.

26.     The SEC also alleged that Vincent & Rees was thereafter retained to prepare documents to "convert" a debt of the company into "purportedly free-trading stock" including an agreement to purchase three promissory notes, and an assignment of those notes to various parties, including Anthony Thompson's company, OTC.

27.     In subsequent sworn testimony, Defendant Rees confirmed that he had extensive experience in relation to reverse merger transactions and companies that are described as "shells," and had previously engaged in transactions and/or dealings with Belmont Partners, the firm that sold the publicly traded shell later known as Recycle Tech.

28.     Defendant Rees testified that he was initially contacted by a representative of Belmont Partners in relation to Recycle Tech, and was "asked if we could do some 144 work for a deal they had recently done."  According to Defendant Rees, he then received information from the representative of Belmont Partners regarding "notes payable" held by Recycle Tech, and was asked if his "firm would write an opinion for conversion and what your fee would be to do so."

29.     Defendant Rees admitted in sworn testimony that he did not actually review any of the documents that were provided to his firm in relation to Recycle Tech.  According to Defendant Rees, his role in relation to Rule 144 opinions was limited to having an initial conversation with the referral source and then turning the matter over to an associate, Defendant Chase Chandler, who had graduated from law school in 2007 and was only a third-year attorney.

30.     Defendant Rees stated that when preparing such opinion letters, he generally had

no further involvement until the point when he would sign the opinion letter, at which time he would speak with the associate and "make sure that we had everything in the file." The discussion with the associate would be very brief because, according to Defendant Rees, "after [Defendant Chandler had] done a couple hundred" opinion letters, Defendant Rees no longer spent time going over each one with him.

31. The associate, Defendant Chandler, not only prepared the Opinion Letter but also agreed to prepare the agreements pursuant to which the "Shareholders" would purchase a portion of a pre-existing indebtedness and/or the notes would be assigned, the notices of conversion, and representation letters that would be signed by the various "Shareholders." Further, Defendant Chandler was advised that the transaction was being restructured so that "no purchaser will own more than 5 percent of the issued and outstanding," in response to concerns regarding whether participants in the transaction were affiliates.

32. Unbeknownst to Mr. Thompson, therefore, the Defendants were the ones who devised and structured the transactions, prepared the documents, and then issued the opinion concerning the validity of the transaction.

33. Defendant Rees generally charged $500 for an opinion letter. In the matter involving Recycle Tech, he charged $3,000 and also received shares of stock. According to Defendant Rees, Defendants charged a higher amount than usual because the Opinion Letter was being prepared for multiple parties, i.e., the Shareholders and transfer agent. A total of 50,000 shares were transferred to Defendants in connection with the issuance of the Opinion Letter, with those shares being divided between Defendants Rees and Chandler.

34. When he signed the Opinion Letter, Defendant Rees understood that it would be provided to and relied on by those identified in the letter as the "Shareholders." He considered

the "Shareholders" or their representatives to be his clients.

35. In or about May 2012, Defendant Rees entered into a Consent Judgment with the SEC in the Recycle Tech action, pursuant to which Defendant Rees was restrained and enjoined from providing legal services "in connection with an offer or sale of securities" or "participating in the preparation or issuance of any opinion letter related to such offerings."

36. Upon information and belief, based upon his entry into the Consent Judgment, Rees failed and/or declined to assert, on his own behalf or on behalf of the clients who relied on his opinion, that the Rees Opinion Letter was correct.

## Damages to Anthony Thompson and OTC Solutions

37. In response to those claims in the Recycle Tech action that related to him, Mr. Thompson put forth substantial defenses and arguments relating to all aspects of the SEC's claims. As of January 2013, however, he was still confronted with the Defendants' apparent acknowledgment that they had issued a false Opinion Letter and/or failure to put forth any arguments in support of the correctness of that Opinion Letter.

38. Mr. Thompson also learned that, with respect to the SEC's allegations under Section 5 of the Securities Act, his own reasonable belief in and reliance on the opinion of counsel as expressed in the Opinion Letter would not constitute a defense. If the SEC were able to establish that the Opinion Letter was false and/or incorrect, his reliance on the Opinion Letter would not relieve him of liability, and the SEC could prevail in its claim for disgorgement from Mr. Thompson of the proceeds of the sales of the Recycle Tech stock.

39. Under the circumstances, and as a direct and proximate result of the actions of the Defendants, Mr. Thompson proceeded to resolve the action on the basis of the Section 5 claim. In or about January of 2013, Mr. Thompson entered into a Consent Judgment with the SEC that

included the requirement that he disgorge amounts received from the sale of the stock, in excess of $600,000.00.

## First Cause of Action
### (Negligence)

40. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 39 as though fully set forth herein.

41. Defendants Vincent & Rees, David Rees and Chase Chandler, at all relevant times, owed to Plaintiffs a duty to exercise reasonable care and diligence in authoring the Opinion Letter and providing it to Plaintiffs. Defendants expressly and impliedly represented and confirmed that they had substantial skill and expertise on the issue of whether stock could be issued and sold subject to an exemption under Rule 144. Mr. Thompson was entitled and even encouraged to rely on the investigation and the opinion expressed by Defendants regarding whether Recycle Tech stock could be transferred without restriction and sold without registration. In authoring the Opinion Letter, expressing in that Letter that Plaintiffs could rely upon it, and with knowledge that Plaintiffs did in fact rely upon it, Defendants owed to Plaintiffs a duty to exercise reasonable care.

42. Defendants represented that they had obtained and considered the documentation and information that was necessary to a determination of that issue.

43. The Opinion Letter was prepared by and issued by the Defendants without a sufficient basis or inquiry and without adequate due diligence, and the representations on which Mr. Thompson relied were either false or the result of negligence and malpractice.

44. Defendants knew, or were reckless in not knowing, that the Opinion Letter was false and/or incorrect.

45. By falsely, recklessly or negligently making statements opining as to the

applicability of an exemption from registration in disregard of their truth and accuracy, Defendants breached their duties to Plaintiffs and failed to perform services consistent with the standard of care that applies to the issuance of such opinions.

46. Plaintiffs justifiably relied on Defendants' claimed skill and expertise to their substantial and continuing detriment.

47. The Defendants' breaches of duty resulted in the Plaintiffs engaging in a receipt and sale of securities that was not permissible under the securities laws, and being subject to the enforcement actions of the SEC, and directly and proximately caused the damage suffered by Plaintiffs in an amount in excess of $1,500,000.00.

**Second Cause of Action**
**(Negligent Misrepresentation)**

48. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 47 as though fully set forth herein.

49. Defendants Vincent & Rees, David Rees and Chase Chandler, at all relevant times, owed to Plaintiffs a duty to exercise reasonable care and diligence in authoring the Opinion Letter and providing it to Plaintiffs. Defendants expressly and impliedly represented and confirmed that they had substantial skill and expertise on the issue of whether stock could be issued and sold subject to an exemption under Rule 144. Mr. Thompson was entitled and even encouraged to rely on the investigation and the opinion expressed by Defendants regarding whether Recycle Tech stock could be transferred without restriction and sold without registration. In authoring the Opinion Letter, expressing in that Letter that Plaintiffs could rely upon it, and with knowledge that Plaintiffs did in fact rely upon it, Defendants owed to Plaintiffs a duty to exercise reasonable care.

11

50. Defendants represented that they had obtained and considered the documentation and information that was necessary to a determination of that issue.

51. The Opinion Letter was prepared by and issued by the Defendants without a sufficient basis or inquiry and without adequate due diligence, and the representations on which Mr. Thompson relied were false.

52. Defendants knew, or were negligent or reckless in not knowing, that the Opinion Letter was false and/or incorrect.

53. By falsely, recklessly or negligently making statements opining as to the applicability of an exemption from registration in disregard of their truth and accuracy, Defendants breached their duties to Plaintiffs and failed to perform services consistent with the standard of care that applies to the issuance of such opinions.

54. Plaintiffs reasonably and justifiably relied on Defendants' claimed skill and expertise to their substantial and continuing detriment.

55. The Defendants' breaches of duty resulted in the Plaintiffs engaging in a receipt and sale of securities that was not permissible under the securities laws, and being subject to the enforcement actions of the SEC, and directly and proximately caused the damage suffered by Plaintiffs in an amount in excess of $1,500,000.00.

**Third Cause of Action**
**(Legal Malpractice)**

56. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57. Defendants held themselves out to Plaintiffs as possessing expertise in matters relating to transfers of securities, and as being skilled and competent attorneys adhering to

professional standards.

58. In authoring the Opinion Letter, expressing in that Letter that Plaintiffs could rely upon it, and with knowledge that Plaintiffs did in fact rely upon it, Defendants acted as counsel for Plaintiffs and formed an attorney-client relationship with Plaintiffs.

59. Defendants failed to act with the requisite level of skill and competence in their representation of Plaintiffs and breached their duties to Plaintiffs by acting in a negligent or reckless manner that was destructive to the Plaintiffs, by issuing a false or incorrect Opinion Letter that then subjected the Plaintiffs both to enforcement action by the SEC and to disgorgement of the amounts that the Plaintiffs had received as compensation for services performed.

60. Defendants' breaches of duty and failure to act with the requisite level of skill and competence in their representation of Plaintiffs directly and proximately caused Plaintiffs to suffer substantial financial damage, caused Plaintiffs to incur substantial expense in defending legal actions, and caused injury to the reputation and business relationships of Plaintiffs.

61. As a result of their actions, Defendants are liable to Plaintiffs for consequential damages in excess of $1,500,000.00.

**Fourth Cause of Action**
**(Breach of Fiduciary Duty)**

62. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63. Defendants Vincent & Rees, David Rees and Chase Chandler, at all relevant times, were fiduciaries of Mr. Thompson and owed to Plaintiffs a duty to exercise reasonable care and diligence in the performance of their services. Defendants expressly and impliedly represented and confirmed that they had substantial skill and expertise on the issue of whether

13

stock could be issued and sold subject to an exemption under Rule 144. Mr. Thompson was entitled and even encouraged to rely on the investigation and the opinion expressed by Defendants regarding whether Recycle Tech stock could be transferred without restriction and sold without registration. In authoring the Opinion Letter, expressing in that Letter that Plaintiffs could rely upon it, and with knowledge that Plaintiffs did in fact rely upon it, Defendants formed a fiduciary relationship with Plaintiffs.

64. Defendants represented that they had obtained and considered the documentation and information that was necessary to a determination of that issue.

65. The Opinion Letter was prepared by and issued by the Defendants without a sufficient basis or inquiry and without adequate due diligence, and the representations on which Mr. Thompson relied were either false or the result of negligence and malpractice.

66. Defendants knew, or were reckless in not knowing, that the Opinion Letter was false and/or incorrect.

67. By falsely, recklessly or negligently making statements opining as to the applicability of an exemption from registration in disregard of their truth and accuracy, Defendants breached their duties to Plaintiffs and failed to perform services consistent with the standard of care that applies to the issuance of such opinions.

68. Plaintiffs justifiably relied on Defendants' claimed skill and expertise to their substantial and continuing detriment.

69. The Defendants' breaches of duty resulted in the Plaintiffs engaging in a receipt and sale of securities that was not permissible under the securities laws, and being subject to the enforcement actions of the SEC, and directly and proximately caused the damage suffered by Plaintiffs in an amount in excess of $1,500,000.00.

WHEREFORE, PLAINTIFFS demand (a) trial by jury, (b) judgment against Defendants for compensatory damages in an amount to be determined at trial but in excess of $1,500,000.00, punitive damages, interest, attorney fees, costs, and (c) such further relief as the Court deems just.

DATED:  January 28, 2016

        SMITH CORRELL LLP

        /s/ Mark L. Smith
        Mark L. Smith
        11766 Wilshire Blvd., Suite 1670
        Los Angeles, CA 90025
        (213) 377-5464
        msmith@smithcorrell.com
        *Counsel for Plaintiffs*

        Maranda E. Fritz (pro hac to be filed)
        THOMPSON HINE LLP
        335 Madison Avenue, 12th Floor
        New York, New York 10017
        (212) 344-5680
        Maranda.Fritz@ThompsonHine.com