# EXHIBIT 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**

Recycle Tech, Inc.; SEPE, Kevin; HALPERIN, Ronny J; GONZALEZ, Ryan; OTC Solutions LLC; THOMPSON, Anthony; Pudong LLC; FUNG, Jay; REES, David; Charter Consulting Group, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Miami-Dade
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James M. Carlson, S.E.C., 801 Brickell Avenue, Suite 1800
Miami, FL 33131; Tel. (305) 982-6328

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |

Personal Injury / Personal Property columns:
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

☐ 791 Empl. Ret. Inc. Security Act

☐ 895 Freedom of Information Act
☐ 896 Arbitration

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | FEDERAL TAX SUITS | |
|---|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding     ☐ 2 Removed from State Court     ☐ 3 Remanded from Appellate Court     ☐ 4 Reinstated or Reopened     ☐ 5 Transferred from another district *(specify)*     ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 77e(a), 77e(c), 77q(a), 77q(b), 78j(b), 78m(a); 17 C.F.R. §§ 240.10b-5, 240.13a-1, 240.13a-13
Brief description of cause:
violation of federal securities laws

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
perm inj, disgorgement,civ penalties; P/S, O/D & PLS bars

CHECK YES only if demanded in complaint:
JURY DEMAND:     ☐ Yes     ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*     JUDGE _____     DOCKET NUMBER _____

DATE     May 2, 2012

SIGNATURE OF ATTORNEY OF RECORD     /s/ James M. Carlson

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

**Apx. 001**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

| | |
|---|---|
| **SECURITIES AND EXCHANGE** | ) |
| **COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **RECYCLE TECH, INC., KEVIN SEPE,** | ) |
| **RONNY J. HALPERIN, RYAN** | ) |
| **GONZALEZ, OTC SOLUTIONS LLC,** | ) |
| **ANTHONY THOMPSON, PUDONG LLC,** | ) |
| **JAY FUNG, and DAVID REES,** | ) |
| | ) |
| **Defendants,** | ) |
| **and** | ) |
| | ) |
| **CHARTER CONSULTING GROUP, INC.,** | ) |
| | ) |
| **Relief Defendant.** | ) |
| _____ | ) |

**COMPLAINT**

Plaintiff Securities and Exchange Commission alleges:

**I. INTRODUCTION**

1.      From no later than January through March 2010, Defendants Recycle Tech, Inc., Kevin Sepe, and Ryan Gonzalez orchestrated, coordinated, and funded a "pump-and-dump" scheme involving the sale of unregistered shares of Recycle Tech stock.  They brought the scheme to Defendant Ronnie J. Halperin, who agreed to help them implement the scheme.

2.      Sepe concocted the scheme in an effort to capitalize on anticipated, increased demand for temporary housing because of the Haitian earthquake disaster of January 12, 2010.  Halperin, Sepe's long-time acquaintance, and Gonzalez, a friend of Sepe's nephew, assisted Sepe in executing the scheme.  Gonzalez organized the conversion of Recycle Tech into a publicly-

-1-

**Apx. 002**

traded company and drafted seven false and misleading press releases, which he then issued through the company.

3.     Defendant David Rees, a securities attorney, also played a significant part in facilitating the fraud.  Halperin retained Rees to convert Recycle Tech's debt into more than 25 million purportedly free trading shares.  The company then issued them to a number of individuals including Halperin, OTC Solutions LLC, Pudong LLC, Rees, and others.

4.     OTC Solutions and Pudong, and their respective owners, Defendants Anthony Thompson and Jay Fung, actively participated in the scheme through their promotion of Recycle Tech stock.  In January and February 2010, OTC Solutions and Pudong, both stock promotion companies, collectively issued five e-mail newsletters touting Recycle Tech.  Thompson and Fung each received more than two million shares of Recycle Tech stock as compensation for their touting efforts.  Their newsletters, however, did not adequately disclose their stock compensation or Thomson and Fung's stock sales.

5.     Halperin, OTC Solutions, Pudong, and Rees each took advantage of the inflated price and trade volume created by the misleading press releases and newsletter campaign.  From February to early March 2010, they collectively sold more than five million Recycle Tech shares into an inflated market and realized proceeds of more than $1.1 million.  In addition, Sepe received at least $150,000 from the sales of Halperin's stock.  Relief Defendant Charter Consulting Group, Inc., an entity controlled by Sepe, also received some of Halperin's ill-gotten gains in an April 2010 wire it received from a Halperin controlled entity.

6.     Additionally, Recycle Tech is delinquent in its periodic filings with the Commission.  In fact, since filing its Form 10-Q on January 13, 2010, it has not filed any periodic reports.

7.    Through their conduct, each Defendant violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c).  In addition:

(a)    Recycle Tech violated Sections 10(b) and 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 78m(a), and Exchange Act Rules 10b-5, 13a-1 and 13a-13, 17 C.F.R. §§ 240.10b-5, 240.13a-1, and 240.13a-13;

(b)    Gonzalez violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, or, in the alternative, aided and abetted Recycle Tech's violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, and aided and abetted Recycle Tech's violations of Section 13(a) of the Exchange Act and Exchange Act Rules 13a-1 and 13a-13;

(c)    Sepe and Halperin aided and abetted Recycle Tech's violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5;

(d)    OTC Solutions, Pudong, Thompson, and Fung each violated Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Sections 17(a) and 17(b) of the Securities Act, 15 U.S.C. §§ 77q(a) and 77q(b).

Unless the Court enjoins the Defendants, they are reasonably likely to continue to violate these provisions of the federal securities laws.

## II.  DEFENDANTS AND RELIEF DEFENDANT

### A.  Defendants

8.    Recycle Tech is a Colorado company.  From February 16, 2010 through June 2010 its principal place of business was Miami, Florida.  Its common stock is quoted on the OTC Link (formerly, "Pink Sheets") operated by OTC Markets Group Inc. under the symbol "RCYT." From no later than February 2010 to June 2010, Recycle Tech purported to be a development and engineering firm specializing in "green building."

9.    Sepe, age 54, is a resident of Miami.  At the time of the scheme, he was a long-time acquaintance of Halperin and is listed as the officer or director of several private Florida companies.

-3-

10.     Halperin, age 63, is a resident of Aventura, Florida.  He is an attorney licensed to practice law in Florida and is the sole member of the law firm Ronny J. Halperin, P.A.  Halperin also served as CEO of HydroGenetics, Inc., a Florida corporation, from January 2009 until April 2009, and served as its director from 2009 until late 2011.

11.     Gonzalez, age 33, is a resident of Miami and a friend of Sepe's nephew.  Since February 16, 2010, Gonzalez has been the CEO and President of Recycle Tech.

12.     OTC Solutions is a Maryland limited liability company formed by Thompson in 2007 as a marketing and advertising company.  From no later than January through March 2010, it was associated with "Explicit Picks" and "Ox of Wall Street," both stock promotional newsletters.

13.     Thompson, age 35, is a resident of Bethesda, Maryland.  From no later than January through March 2010, he was the sole member of OTC Solutions.

14.     Pudong is a Florida limited liability company with its principal place of business in Delray Beach, Florida.  From no later than January through March 2010, it was a marketing and advertising company associated with "Penny Pic," a stock promotional newsletter.

15.     Fung, age 37, is a resident of Delray Beach, Florida.  From at least January through March 2010, he was the sole member of Pudong.

16.     Rees, age 44, is a resident of Salt Lake City, Utah.  He is a corporate and securities attorney licensed to practice law in Utah.  He is a partner at the Utah law firm Vincent & Rees, LLC.

## B. <u>Relief Defendant</u>

17.     Charter Consulting is a Florida corporation, controlled by Sepe as its sole officer and director.

-4-

18.    In April 2010, Charter received a $300,000 wire from Ronny J. Halperin, P.A. consisting of, among other things, $150,000 in profits made through the illegal sale of Recycle Tech stock.  Charter did not sell any goods or services to Halperin's law firm justifying the $150,000 it received.

### III.  JURISDICTION AND VENUE

19.    The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), 20(g), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), 77t(e), 77t(g), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

20.    This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida.  At all times relevant to the actions alleged in this Complaint, Recycle Tech and Pudong's principal places of business were in the District, and Sepe, Halperin, Gonzalez, and Fung resided in the District.  Additionally, many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District.  Specifically, Rees directed documents and phone calls to the other Defendants located in the District.  Also, during the fraud, Sepe contacted OTC Solutions and Thompson from the District, and Halperin sent them their compensation from the District.

21.    In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

Apx. 006

## IV.  FACTUAL ALLEGATIONS

### A.  Sepe and Halperin Seek Out a Company
### to Orchestrate the Pump-and-Dump Scheme

22.     In January 2010, Sepe concocted a "pump-and-dump" scheme to take advantage of a perceived market for cheap, mobile housing in the wake of a Haitian earthquake.  To execute the scheme, Sepe brought the scheme to Halperin, and they decided to gain control of a publicly-traded company.

23.     On January 19, 2010, a week after Haiti's catastrophic earthquake, Sepe arranged for Gonzalez, his nephew's fishing buddy, to incorporate a sham private company, Green Building Engineering & Contractors, LLC.  Headquartered in Miami, Green Buildings was purportedly a sophisticated builder of "home container units," allegedly in the business of converting river barges into cost-effective, eco-friendly, hurricane-and-seismic-resistant, mobile shelters, ready to be shipped anywhere in the world.

24.     In truth, Green Building had no operations, customers, products, sales, money, or revenues.  It never manufactured, sold, or delivered any eco-friendly home container units.  At most, it had two part-time employees, Gonzalez and his aunt, who were also its sole officers.  The company's assets consisted of a set of tools worth at most $5,000 and three unfinished prototypes.

25.     With Green Building formed, Sepe and Halperin sought a suitable public shell company in which to reverse merge Green Building and bring it public.  Within a week of Green Building's incorporation, Sepe and Halperin engaged a self-proclaimed "leading provider of public shell companies for reverse merger transactions."  They selected Recycle Tech to use as the shell.  At the time, it was a failed computer parts repair company with no or nominal operations, no or nominal assets, and a small amount of debt.

-6-

26.     Before obtaining Recycle Tech for Sepe and Halperin, the professional shell provider contacted Rees.  After discussing the deal with the shell provider, Rees confirmed he could convert Recycle Tech's debt into purportedly free-trading shares and issue an opinion letter formalizing the transaction.  The professional shell provider then referred Halperin to Rees's law firm, Vincent & Rees.

**B.  Halperin Hires Rees to Convert Recycle Tech's Debt
into Unrestricted Stock Shares and Complete the Reverse Merger**

27.     In late January 2010, Halperin retained Vincent & Rees to coordinate the purchase, assignment, and subsequent conversion of Recycle Tech's debt into purportedly free-trading stock.  Halperin also asked Rees to issue an opinion letter regarding the transactions, and he provided Rees with the necessary documents and signatures for the transaction.

28.     Rees directed and supervised the drafting of the necessary documents to convert Recycle Tech's debt into purportedly free trading stock.  These documents included:

    (a)     the purchase and assignment agreement of Recycle Tech's purported three promissory notes and subsequent assignment of stock to a list of 22 assignees (the "Assignees"); and

    (b)     the necessary non-affiliate letters and conversion letters for the Assignees, whereby they ultimately received purportedly converted free trading Recycle Tech stock.

29.     Halperin provided Rees' law firm with the list of Assignees, who included Halperin, OTC Solutions, Pudong, Rees, and others.  Halperin also coordinated the process of obtaining the necessary signatures from the assignees for the conversion and non-affiliate letters.  Additionally, he provided other necessary documents to Rees' law firm, including, a Recycle Tech corporate resolution.

30.     Ultimately, Halperin wired payment to Vincent & Rees and agreed to provide Rees and an associate with 25,000 converted, unrestricted shares of Recycle Tech stock.

**Apx. 008**

31.     While Rees prepared the legal documents necessary to execute the fraud, Halperin and Sepe set up Recycle Tech for acquisition.  Based on their instructions, on January 28, 2010, the professional shell provider purchased the majority of Recycle Tech's stock and the shell provider's founder and president replaced the existing Recycle Tech officers as the sole officer.

32.     At the same time, Sepe initiated the promotional side of the scheme.  He engaged OTC Solutions and Pudong to tout Recycle Tech stock through their various newsletters.  Sepe promised each promoter more than two million free-trading shares of Recycle Tech stock as compensation.

### C.  Rees Issues a False Legal Opinion Letter Making Misstatements and Relying on False or Outdated Documents

33.     Rees oversaw the drafting of a letter opining the Assignees had complied with Rule 144 of the Securities Act, 17 C.F.R. § 230.144 (the "Opinion Letter"), and consequently, did not need to register the planned offering of Recycle Tech stock.  The Opinion Letter also stated 25 million newly-issued shares of Recycle Tech stock, converted from its debt, should be issued without a restricted legend.

34.     On January 29, 2010, Rees signed the Opinion Letter and sent it to Recycle Tech's transfer agent.  The Opinion Letter, however, contained false representations, misapplied Rule 144, and relied on several false or outdated documents.

35.     Rule 144 contains a series of conditions that, if properly met, will provide a reselling shareholder a safe harbor from the Securities Act's registration requirements and allow resale of restricted shares of stock.  Here, Recycle Tech conveyed stock to the Assignees.  The shares, however, were restricted because they were acquired directly or indirectly from the issuer in a chain of transactions not involving a public offering.  Moreover, the Assignees did not meet

-8-

Rule 144's required conditions.   Instead, Rees misapplied the Rule's requirements, and accordingly, its safe harbor was unavailable to the Assignees.

36.    First, the Opinion Letter falsely represented that Recycle Tech was not a public shell company and therefore could qualify for Rule 144 safe harbor consideration.   To the contrary, Rees received at least one communication from the shell provider indicating Recycle Tech was a shell company.   Prior to signing the Opinion Letter, Rees never performed any due diligence concerning Recycle Tech's status as a shell company.

37.    Second, the Opinion Letter misapplied Rule 144's holding requirements for the Assignees.   Pursuant to Rule 144, the Assignees were required to hold the securities for six months from the date they bought and fully paid for the securities.   The Opinion Letter, however, miscalculated the holding period.   It incorrectly "tacked back" the Assignees' holding time period to the dates Recycle Tech allegedly incurred the debt – February 26, 2008, August 1, 2008, and June 15, 2009.   In fact, there is no provision in Rule 144(d)(3) permitting such "tacking back."

38.    The proper calculation would have begun the holding period from the Assignees' date of acquisition of the convertible note, January 26, 2010.   As a result, Rees incorrectly concluded the Assignees had met their twelve-month holding requirement.

39.    Third, Recycle Tech was delinquent with respect to its obligation to file an Item 2.01 Form 8-K reporting the completion of the reverse merger transaction and including the requisite audited financial statements of Green Building.   Therefore, Rule 144 was not available under Rule 144(c)(1)(i) because of this lack of adequate current public information.

**Apx. 010**

40.     Fourth, the Opinion Letter relied on several false or outdated documents.  For example, two of the three promissory notes referenced in the Opinion Letter were fabricated, and one note was backdated more than two months.  These were the very notes converted into purportedly unrestricted stock.

41.     Simple due diligence – namely contacting the original holder of the debt – would have revealed two of the three notes were fabricated and not connected to any actual debt.  Moreover, the third promissory note is dated June 15, 2009.  To the contrary, the company actually incurred this debt on August 29, 2009.

42.     The Opinion Letter also relied on an outdated board resolution authorizing the issuance of the shares.  Recycle Tech's old board signed the resolution, and Rees did not contact the new board to confirm the resolution was still effective.

### D.  Rees' Opinion Letter Ignored Several Red Flags

43.     The Opinion Letter also ignored several red flags concerning certain of the Assignees who were likely to evade registration requirements.

44.     First, Rees failed to note the conversion of Recycle Tech's $34,000 debt into 25 million free trading shares would double the company's then outstanding shares.  Rees knew, or should have known, that some individuals receiving the shares were likely to immediately sell these shares into the market.  For example, Rees intended to sell, and did in fact sell, the shares he received from Recycle Tech soon after receiving them.

45.     Second, Rees ignored the likely affiliate status of at least one of the Assignees, Halperin.  Pursuant to Rule 144, an affiliate of an issuer is a person who directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such an issuer.  Rees knew, or should have known, that Halperin exerted direct or indirect

-10-

control over Recycle Tech and was therefore an affiliate.  In fact, Rees' sole contact with Recycle Tech was through Halperin.

46.     Rather than addressing Halperin's likely affiliate status, the Opinion Letter opined Halperin could receive free trading shares of Recycle Tech without applying the correct limiting Rule 144 provisions to an affiliate's sales of stock.  Such provisions include limitations on amount sold, manner of sale, and required notice of proposed sale.  Rees applied none of these limitations in the Opinion Letter.

### E.  Halperin Distributes Unrestricted Recycle Tech Stock, and Green Building Reverse Merges into Recycle Tech

47.     On January 27, 2010, Gonzalez signed the Recycle Tech corporate resolution authorizing the issuance of more than 25 million shares of Recycle Tech stock to the Assignees.

48.     In early February 2010, pursuant to the Opinion Letter and the corporate resolution, Recycle Tech's transfer agent issued more than 25 million shares of stock to more than twenty Assignees, including OTC Solutions, Pudong, and Halperin.  The transfer agent sent the certificates to Halperin, who distributed them to the Assignees.  They, in turn, deposited them into their respective brokerage accounts.

49.     With a number of different assignees now holding shares, Sepe and Halperin sought to reverse merge Green Building into Recycle Tech.

50.     On February 16, 2010, Sepe and Halperin orchestrated the purchase of Recycle Tech from the professional shell provider.  Sepe paid more than $200,000 to the professional shell provider for Green Building's purchase of the majority of Recycle Tech's shares.

51.     Halperin, in turn, provided a common stock purchase agreement to Gonzalez for his signature.  Pursuant to this agreement, Green Building became the owner of the controlling majority of Recycle Tech's shares.

-11-

52.     With the reverse merger completed, Gonzalez took his position as CEO and president of Recycle Tech.

### F.  Recycle Tech, Gonzalez, and Sepe "Pump" the Stock
### By Issuing Seven False and Misleading Press Releases

53.     With all of the pieces now in place, the Defendants proceeded to artificially inflate the value of Recycle Tech's stock.  Just two days after Green Building's reverse merger into Recycle Tech, Sepe and Gonzalez initiated the "pump" of the stock.

54.     From February 18 to 25, 2010, Recycle Tech issued seven false and misleading press releases.  As CEO of Recycle Tech, Gonzalez had ultimate authority over the press releases.  He drafted them, hired a public relations consultant, and provided the releases to the consultant.  Gonzalez also instructed the consultant to issue the press releases pursuant to a time schedule Sepe set.

55.     On February 18, 2010, Recycle Tech's first press release announced Green Building's acquisition of Recycle Tech.  It also falsely represented Green Building as "a builder of 'green' structures made of recycled materials" and "the only builder of container homes in South Florida."  Neither statement was true.

56.     Green Building never built any finished container homes.  At most, it had several prototypes used to tout the purported product to prospective investors.

57.     Furthermore, Green Building had existed for less than a month, during which time it had minimal, if any, assets, no clients, no sales, no revenues, two part-time employees, and no ongoing operations.  It acquired and reverse merged into Recycle Tech, another entity which had minimal – if any – assets, limited revenues, no employees, and no ongoing operations.

58.     Recycle Tech's February 18, 2010 press release also falsely stated Green Building "has assembled a highly experienced and dedicated team of architects, engineers, and contractors

-12-

to create and assemble these completely green structures." In truth, the company had hired none of the individuals it claimed.

59.     Recycle Tech's February 22, 2010 press release also falsely represented it had opened "a green container showroom," unveiling emergency multiple human shelter prototypes for media and contractors to view. In fact, no such showroom was ever opened.

60.     Recycle Tech's February 23, 2010 press release falsely represented, among other things, the company had signed a binding letter of intent to build up to 50 homes in Haiti. The press release failed to disclose Recycle Tech was expected to fund the building of the 50 homes. It also failed to disclose Recycle Tech had no cash or any other ability to do so.

61.     Recycle Tech's February 24, 2010 press release falsely represented, among other things, Recycle Tech was "breaking ground" in a month's time "to showcase" its "container building in historical Overtown located in South Florida." At the time of the press release, however, the company did not have the funds, equipment, or staff required to break ground in a month's time.

62.     Recycle Tech's February 25, 2010 press release falsely represented, among other things, that Recycle Tech was adding an "award winning architect to its staff." At the time of the press release, however, the Company had not added such an architect. Further, the company had no means to do so. In fact, Recycle Tech had no staff at all.

63.     All seven of Recycle Tech's press releases contained the same misleading by-line:

> [Recycle Tech]…now will manufacture and deliver premium eco-friendly Container Homes, as well as LEED Certified Green Homes, Communities, Buildings, and City Structures across the world.

64.     In truth, Recycle Tech never had the staff, resources, or equipment to "manufacture and deliver premium eco-friendly Container Homes."

**Apx. 014**

### G.  OTC Solutions and Pudong Tout Recycle Tech Stock without Properly Disclosing Their Stock Compensation or Intent to Sell

65.     Four days after the February 18 press release, OTC Solutions and Pudong started touting Recycle Tech stock in their newsletters.  Thompson and Fung, the respective owners of OTC Solutions and Pudong, had previously agreed to coordinate their touting with each other and with Sepe.

66.     Before they issued their newsletters, Sepe agreed to provide Thompson and Fung with 2.325 million shares each of Recycle Tech stock.  Halperin provided the actual shares to Thompson and Fung.

67.     On February 22, 23, and 24, 2010, OTC Solutions and Pudong collectively issued at least five newsletters promoting Recycle Tech.  Many of the newsletters reprinted portions of Recycle Tech's false and misleading press releases, which Sepe had provided to Thompson and Fung.

68.     Each newsletter included its own language hyping the stock.  For instance, the various newsletters touted Recycle Tech as: a "golden opportunity;" "the type of GEM you want to research on before Wall Street gets a hold of it;" "a huge bargain that could be gone very soon!" and the Next EXPLOSIVE Stock."   None of the newsletters disclosed the newsletter owner's intent to sell shares, or named the source of the stock the newsletter had received.

### 1.  OTC Solutions' Recycle Tech Touting and Scalping

69.     Between February 22 and February 25, 2010, Thompson, through OTC Solutions, engaged in the fraudulent practice of "scalping," specifically, selling the same stock his own reports on Recycle Tech were recommending that investors buy without disclosing the sales.

70.     After receiving its 2.325 million shares, OTC Solutions issued at least four newsletters touting Recycle Tech.  Specifically, on February 22, 2010 and February 24, 2010,

-14-

OTC Solutions touted Recycle Tech in two issues of "Explicit Picks" and two issues of "Ox of Wall Street."

71.    Also on February 22, 2010, OTC Solutions started selling its Recycle Tech shares.  It sold all 2.325 million shares by February 25.  These sales contradicted the recommendations OTC Solutions made regarding Recycle Tech.

72.    None of OTC Solutions' newsletters disclosed the stock compensation it received from Sepe for the promotional campaign, its ownership of Recycle Tech stock, or its stock sales. Instead, the four newsletters contained a brief disclaimer section regarding penny stocks in general and OTC Solutions' registration status.

## 2.  Pudong's Recycle Tech Touting

73.    On February 23, 2010, Fung, through Pudong, also engaged in the fraudulent practice of scalping.

74.    On February 23, after receiving its 2.325 million shares of Recycle Tech stock, Fung's company, Pudong, issued at least one "Penny Pic" newsletter touting Recycle Tech.  On the same day, Pudong sold all 2.325 million of its Recycle Tech shares.  This sale contradicted the recommendations Pudong made regarding Recycle Tech.

75.    Moreover, the newsletter only contained a general disclaimer.  The newsletter disclosed:

> [w]hen Pennypic.com receives free trading shares as compensation for a profiled company, Pennypic.com may sell part or all of any such shares during the period in which Pennypic.com is performing such services."  It then specifically disclosed that it "has received from a third party non affiliate 2.325 million free trading shares of [Recycle Tech] for advertising and marketing.

76.    The newsletter did not, however, disclose the third party's identity or Fung's Recycle Tech stock sales.

**Apx. 016**

### H.  Promotional Campaign Falsely
### Inflates the Market for Recycle Tech Shares

77.     In the three-month period preceding the promotional campaign, Recycle Tech had experienced only four days of any reported trading of its stock.

78.     The stock price remained consistently at ten cents per share from December 10, 2009 to February 1, 2010.  From February 2, 2010 to February 16, 2010, the price of Recycle Tech stock stood at eleven cents per share.

79.     From February 3 through 16, 2010, no shares of Recycle Tech were traded.  On February 18, 2010, the day Recycle Tech issued its first press release, the company's trading volume jumped to 35,000 shares from 6,000 the previous day.  The day after the company issued its first press release, the stock volume soared to over more than 2,000,000 shares.

80.     Over the next several days, with the addition of OTC Solutions and Pudong's newsletters, the stock volume increased to more than 18 million shares traded, with an intraday high of 28 cents per share.

### I.  Halperin, OTC Solutions, Pudong, and Rees
### Dump Their Recycle Tech Stock

81.     Taking advantage of Recycle Tech's artificially raised stock price, a number of the Defendants sold their shares.

82.     From February 23, 2010 to March 2, 2010, Halperin sold 1,130,000 shares for $235,060.

83.     From February 22, 2010 to February 25, 2010, OTC Solutions sold 2,325,000 shares for $441,722.

84.     On February 23, 2010, Pudong sold 2,325,000 shares for $456,457.

85.     On February 23, 2010, Rees sold 25,000 shares for $5,982.

-16-

86.     Sepe, who did not directly receive shares of Recycle Tech stock pursuant to the conversion of debt, was compensated from others' sales of Recycle Tech stock.  Halperin wired Sepe's company, Charter Consulting, $300,000 from his law firm account on April 12, 2010. At least $150,000 of that wire came from the illegal sale of Recycle Tech stock.

### J.   Recycle Tech Failed to Meet Its Registration and Filing Requirements

87.     No registration statement was ever filed with the Commission or in effect for any class of Recycle Tech shares.   Additionally, there was no exemption from the registration requirements for any of the Defendants' stock sales.

88.     Since its Form 10-Q filed on January 13, 2010 for the quarterly period ended November 30, 2009, Recycle Tech has not made any periodic filings as required.  In fact, since Gonzalez became President of Recycle Tech, the company has been delinquent in all of its required filings.

### COUNT I

**Sale of Unregistered Securities in Violation of
Sections 5(a) and (c) of the Securities Act
(Against All Defendants)**

89.     The Commission repeats and realleges paragraphs 1-21, 47, 48, and 81-87 of its Complaint.

90.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

91.     From January through March 2010, the Defendants directly and indirectly:

(a)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise;

-17-

(b)    carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)    made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

92.    By reason of the foregoing, the Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(1) of the Securities Act
**(Against Defendants OTC Solutions, Thompson, Pudong, and Fung)**

93.    The Commission repeats and realleges Paragraphs 1-21, 27-29, 31, 32, and 65-86 of its Complaint.

94.    From January through March 2010, OTC Solutions, Thompson, Pudong, and Fung, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

95.    By reason of the foregoing, OTC Solutions, Thompson, Pudong, and Fung, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(2) and (3) of the Securities Act
**(Against Defendants OTC Solutions, Thompson, Pudong, and Fung)**

96. The Commission repeats and realleges Paragraphs 1-21, 27-29, 31, 32, and 65-86 of its Complaint.

97. From January through March 2010, OTC Solutions, Thompson, Pudong, and Fung, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities:

(a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(b) engaged in transactions, practices and courses of business which operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

98. By reason of the foregoing, OTC Solutions, Thompson, Pudong, and Fung, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) and (3) of the Securities Act, 15 U.S.C. §§ 77q(a)(3) and 77q(a)(3).

## COUNT IV

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(b) of the Securities Act
**(Against Defendants OTC Solutions, Thompson, Pudong, and Fung)**

99. The Commission repeats and realleges Paragraphs 1-21, 27-29, 31, 32, and 65-86 of its Complaint.

100. From January through March 2010, OTC Solutions, Thompson, Pudong, and Fung, by the use of the means or instruments of transportation or communication in interstate

-19-

commerce or by the use of the mails, published, gave publicity to, or circulated communications that, though not purporting to offer securities for sale, described certain securities.

101.    OTC Solutions, Thompson, Pudong, and Fung received consideration for such activities from or on behalf of the issuer of these securities and did not fully disclose the receipt of such consideration and the amounts.

102.    By reason of the foregoing, OTC Solutions, Thompson, Pudong, and Fung, directly or indirectly, have violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b).

## COUNT V

### Fraud in Connection with the Purchase or Sale of Securities in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act
#### (Against Defendants Recycle Tech and Gonzalez)

103.    The Commission repeats and realleges Paragraphs 1-33, 47-64, 77-81, and 87-88 of its Complaint.

104.    From January 2010 through March 2010, Recycle Tech and Gonzalez directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, as described herein, knowingly, willfully, or recklessly:

    (a)    employed devices, schemes or artifices to defraud;

    (b)    made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

Apx. 021

105.    By reason of the foregoing, Recycle Tech and Gonzalez violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT VI

### Aiding and Abetting Violations of
### Section 10(b) and Rule 10b-5 of the Exchange Act
### (Against Defendant Gonzalez)

106.    The Commission repeats and realleges Paragraphs 1-33, 47-64, 77-81, and 87-88 of its Complaint.

107.    From January 2010 through March 2010, Recycle Tech directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, as described herein, knowingly, willfully, or recklessly:

(a)    employed devices, schemes or artifices to defraud;

(b)    made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

108.    Gonzalez, from no later than January 2010 through March 2010, knowingly or recklessly substantially assisted Recycle Tech's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R § 240.10b-5.

109.    By reason of the foregoing, Gonzalez violated and, unless enjoined, is reasonably likely to continue to, assist violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

Apx. 022

## COUNT VII

### Aiding and Abetting Violations of
### Section 10(b) and Rule 10b-5 of the Exchange Act
### (Against Defendant Sepe)

110.    The Commission repeats and realleges Paragraphs 1-33, 47-64, 77-81, and 87-88 of its Complaint.

111.    From January 2010 through March 2010, Recycle Tech directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, as described herein, knowingly, willfully, or recklessly:

(a)    employed devices, schemes or artifices to defraud;

(b)    made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

112.    Sepe, from no later than January 2010 through March 2010, knowingly or recklessly substantially assisted Recycle Tech's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R § 240.10b-5.

113.    By reason of the foregoing, Sepe aided and abetted Recycle Tech's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 and, unless enjoined, is reasonably likely to continue to assist violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

Apx. 023

## COUNT VIII

### Aiding and Abetting Violations of
### Section 10(b) and Rule 10b-5(a) &(c) of the Exchange Act
### (Against Defendant Halperin)

114.     The Commission repeats and realleges Paragraphs 1-33, 47-64, 66, 77-82, and 87-88 of its Complaint.

115.     From January 2010 through March 2010, Recycle Tech directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, as described herein, knowingly, willfully, or recklessly:

(a)     employed devices, schemes or artifices to defraud; or

(c)     engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

116.     Halperin, from no later than January 2010 through March 2010, knowingly or recklessly substantially assisted Recycle Tech's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) &(c) thereunder, 17 C.F.R § 240.10b-5(a) &(c).

117.     By reason of the foregoing, Halperin aided and abetted Recycle Tech's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) &(c), 17 C.F.R. § 240.10b-5(a) &(c) and, unless enjoined, is reasonably likely to continue to assist violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) &(c), 17 C.F.R. § 240.10b-5(a) &(c).

## COUNT IX

### Fraud in Connection with the Purchase or Sale of Securities in
### Violation of Section 10(b) and Rule 10b-5 of the Exchange Act
### (Against Defendants OTC Solutions, Thompson, Pudong, and Fung)

118.     The Commission repeats and realleges Paragraphs 1-21, 27-29, 31, 32, and 65-86 of its Complaint.

-23-

119.    From January 2010 through March 2010, OTC Solutions, Thompson, Pudong, and Fung directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, as described herein, knowingly, willfully, or recklessly:

(a) employed devices, schemes or artifices to defraud;

(b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or or

(c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

120.    By reason of the foregoing, OTC Solutions, Thompson, Pudong, and Fung violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT X

### Violation of Section 13(a) and
### Rules 13a-1 and 13a-13 of the Exchange Act
### (Against Defendant Recycle Tech)

121.    The Commission repeats and realleges Paragraphs 1-21, 27-32, and 88 of its Complaint.

122.    By failing to file with the Commission annual and quarterly reports on Form 10-KSB and Form 10-QSB since January 13, 2010, Recycle Tech violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 13a-l and 13a-13.

Apx. 025

## COUNT XI

### Aiding and Abetting Violation of Section 13(a) and
### Rules 13a-1 and 13a-13 of the Exchange Act
### (Against Defendant Gonzalez)

123.    The Commission repeats and realleges Paragraphs 1-21, 27-32, and 88 of its

Complaint.

124.    By failing to file with the Commission annual and quarterly reports on Form 10-

KSB and Form 10-QSB since January 13, 2010, Recycle Tech violated, and unless restrained

and enjoined will continue to violate, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a),

and Exchange Act Rules 13a-l and 13a-13.

125.    Gonzalez knowingly provided substantial assistance to Recycle Tech's violation

of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 13a-l and

13a-13, 17 C.F.R. §§ 240.13a-1 and 240.13a-13.

126.    By engaging in the conduct described above and pursuant to Section 20(e) of the

Exchange Act, 15 U.S.C. § 78t(e), Gonzalez aided and abetted Recycle Tech's violations, and

unless restrained and enjoined will continue to aid and abet violations, of Section 13(a) of the

Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 13a-1 and 13a-13, 17 C.F.R. §§

240.13a-1, and 240.13a-13.

### RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the

federal securities laws alleged herein.

Apx. 026

## II.

## Permanent Injunctive Relief

Issue permanent injunctions pursuant to Rule 65(d) of the Federal Rules of Civil Procedure enjoining all Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with him, from directly or indirectly violating Sections 5(a), 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and enjoining:

(a)   Recycle Tech, its agents, servants, employees, attorneys, and all persons in active concert or participation with it, from directly or indirectly violating Sections 10(b) and 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 78m, and Exchange Act Rules 10b-5, 13a-1 and 13a-13, 17 C.F.R. §§ 240.10b-5, 240.13a-1, and 240.13a-13;

(b)   Gonzalez, his agents, servants, employees, attorneys, and all persons in active concert or participation with him, from directly or indirectly violating Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 and Section 13(a) of the Exchange Act and Exchange Act Rules 13a-1 and 13a-13;

(c)   Sepe and Halperin, their agents, servants, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly violating Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5; and

(d)   OTC Solutions, Pudong, Thompson, and Fung, their agents, servants, employees, attorneys, and all persons in active concert or participation with him, from directly or indirectly violating Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Sections 17(a) and 17(b) of the Securities Act, 15 U.S.C. §§ 77q(a) and 77q(b).

## III.

## Disgorgement

Issue an Order directing Sepe, Halperin, OTC Solutions, Thompson, Pudong, Fung, Rees, and Charter Consulting to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

-26-

## IV.

### Penalties

Issue an Order directing Sepe, Halperin, Gonzalez, OTC Solutions, Thompson, Pudong, Fung, and Rees to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## V.

### Penny Stock Bar

Issue an order barring Gonzalez, Sepe, Halperin, Thompson, and Fung from participating in any offering of penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d) of the Exchange Act,15 U.S.C. § 78u(d), for the violations alleged herein.

## VI.

### Officer and Director Bar

Issue an order barring Gonzalez and Halperin from acting as an officer or director of any public company pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), for the violations alleged herein.

## VII.

### Professional Services Bar

Issue an order barring Rees from providing professional legal services to any person in connection with the offer or sale of securities pursuant to, or claiming, an exemption under Section 4(1) of the Securities Act, including, without limitation, participating in the preparation or issuance of any opinion letter related to such offerings based on his violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

-27-

# VIII.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

# IX.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

May 2, 2012    By: _____

James M. Carlson
Senior Trial Counsel
S.D. Florida Bar # A5501534
Telephone: (305) 982-6328
Facsimile: (305) 536-4154
E-mail: CarlsonJa@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

-28-

**Apx. 029**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Recycle Tech, Inc.
2039 NW 1st Place
Miami, FL 33127

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____
*Signature of Clerk or Deputy Clerk*

**Apx. 030**

Case 1:12-cv-21656-DAK   Document 22   Filed 08/08/13   Page 32 of 40

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| *Defendant* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Kevin Sepe
17961 Biscayne Blvd., Suite B-1
Aventura, FL 33160

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____            _____

*Signature of Clerk or Deputy Clerk*

**Apx. 031**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Ronny Halperin
Ronny Halperin, PA
17961 Biscayne Blvd., Suite B-1
North Miami Beach, FL 33160

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____         _____
*Signature of Clerk or Deputy Clerk*

**Apx. 032**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| *Defendant* | ) |

Civil Action No. _____

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Ryan Gonzalez
President
Recycle Tech, Inc.
2039 NW 1st Place
Miami, FL 33127

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

**Apx. 033**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )  Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  OTC Solutions LLC
Anthony J. Thompson, Jr., Managing Director
4424 Montgomery Avenue
Suite 201
Bethesda, MD 20814

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                              *Signature of Clerk or Deputy Clerk*

**Apx. 034**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| *Defendant* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Anthony J. Thompson, Jr.
OTC Solutions LLC
4424 Montgomery Avenue
Suite 201
Bethesda, MD 20814


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____          _____
                                                                  *Signature of Clerk or Deputy Clerk*


**Apx. 035**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| _Plaintiff_ | ) ) ) |
| v. | ) Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, Ryan Gonzalez, OTC Solutions LLC, et al. | ) ) ) |
| _Defendant_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Pudong LLC
Jay Fung, Member
900 North Federal Highway 200
Boca Raton, FL 33432

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____       _____
_Signature of Clerk or Deputy Clerk_

**Apx. 036**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Jay Fung
Pudong LLC
900 North Federal Highway 200
Boca Raton, FL 33432

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____            _____

*Signature of Clerk or Deputy Clerk*

**Apx. 037**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, | ) |
| Ryan Gonzalez, OTC Solutions LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   David Rees
c/o Paul T. Moxley
Parsons Kinghorn Harris
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

**Apx. 038**

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Florida

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Recycle Tech, Inc., Kevin Sepe, Ronny J. Halperin, Ryan Gonzalez, OTC Solutions LLC, et al. | ) | |
| *Defendant* | ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Charter Consulting Group, Inc.
4770 Biscayne Blvd, Ste 1400
Miami, FL 33137

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
Tel. (305) 982-6328

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                          *Signature of Clerk or Deputy Clerk*